# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ZAHARA ARIEL LLC**<br>5709 Westbourne Avenue<br>Columbus, Ohio 43213,<br><br>and<br><br>**JARYAH BOBO**<br>2765 Bexley Park Road<br>Columbus, Ohio 43205<br><br>　　　　Plaintiffs,<br><br>v.<br><br>**LIONSGATE ENTERTAINMENT CORPORATION**<br>2700 Colorado Avenue<br>Santa Monica, California 90404<br><br>and<br><br>**MRC II DISTRIBUTION COMPANY L.P.**<br>c/o Scott Tenley<br>1800 Century Park East, 10th Floor<br>Los Angeles, California 90067<br><br>and<br><br>**HOT SAUCE LLC**<br>c/o Ken Makowski<br>100 N. Crescent Drive<br>Beverly Hills, California 90210<br><br>and<br><br>**OAKTREE ENTERTAINMENT LLC**<br>c/o Alicia G. Barmore<br>5062 Lankershim Blvd., STE 204<br>North Hollywood, California 91601<br><br>and<br><br>**DEWAYNE PERKINS** | Case No.<br><br>Judge<br><br><br><br><br><br><br><br>**JURY DEMAND**<br><br>**ENDORSED HEREIN** |

| | |
|---|---|
| c/o Artists First | : |
| 9465 Wilshire Blvd., 9th Floor | : |
| Beverly Hills, California 90212 | : |
| | : |
| and | : |
| | : |
| **LATESHA WILLIAMS** | : |
| 395 Halsey Street | : |
| Brooklyn, NY 11233 | : |
| | : |
| and | : |
| | : |
| **JOHN DOES 1-10** | : |
| ADDRESSES UNKNOWN, | : |
| | : |
| Defendants. | : |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Zahara Ariel LLC ("Zahara") and Jaryah Bobo ("Bobo") (collectively, "Plaintiffs") hereby file this Complaint against Defendants Lionsgate Entertainment Corporation ("Lionsgate"), MRC II Distribution Company, L.P. ("MRC"), Hot Sauce LLC ("Hot Sauce"), Oaktree Entertainment LLC ("Oaktree"), Dewayne Perkins ("Perkins"), Latesha Williams ("Williams") and John Does #1-10 ("the John Doe Defendants"), (collectively, "Defendants"). For their Complaint against Defendants, Plaintiffs state and aver as follows:

### PARTIES, JURISDICTION AND VENUE

1. This is an action for copyright infringement and for unfair competition arising under the laws of the United States of America, including but not limited to the Copyright Act of 1976, Title 17, United States Code, §§ 101, *et seq*.

2. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 (a) and (b).

3. Bobo is an individual and a resident of Franklin County, Ohio.

4. Zahara is an Ohio limited liability company that was formed in October 2012.

2

Zahara's principal place of business is in Franklin County, Ohio, and Bobo is Zahara's sole member.

5. Plaintiffs are informed and believe and thereby allege that Lionsgate is a business organized under the laws of the State of Delaware with its principal place of business in Santa Monica, California; that Lionsgate is in the business of producing and distributing motion pictures; and that Lionsgate is distributing a film entitled *The Blackening* set for release on June 16, 2023.

6. Plaintiffs are informed and believe and thereby allege that MRC is a business organized under the laws of the State of Delaware with its principal place of business in Beverly Hills, California; that MRC is in the business of producing motion pictures and televisions shows; and that MRC produced a film entitled *The Blackening* set for release on June 16, 2023.

7. Plaintiffs are informed and believe and thereby allege that Hot Sauce is a business organized under the laws of the State of California with its principal place of business in Beverly Hills, California.

8. Plaintiffs are informed and believe and thereby allege that Oaktree is a business organized under the laws of the State of California with its principal place of business in Los Angeles, California.

9. Plaintiffs are informed and believe and thereby allege that Perkins is an individual residing in Los Angeles, California.

10. Plaintiffs are informed and believe and thereby allege that Williams is an individual residing in Brooklyn, New York.

11. The John Doe Defendants are other parties not yet identified who have infringed Plaintiffs' copyrights or have engaged in one or more of the wrongful practices alleged herein. The true names, whether corporate, individual or otherwise, of the John Doe Defendants are

presently unknown to Plaintiffs, who therefore bring suit against them under such fictitious names. Plaintiffs will seek leave to amend this Complaint to substitute the true names and capacities of the John Doe Defendants once they are ascertained.

12. Pursuant to Ohio Revised Code §§ 2307.381-385, Civ. R. 4.3 and the due process clauses of the United States and Ohio constitutions, this Court has personal jurisdiction over all Defendants for the following reasons: Defendants transacted business in Ohio; Defendants caused tortious injury to Plaintiffs in Ohio by acts inside and outside Ohio committed with the purpose of injuring Plaintiffs when Defendants might reasonably have expected that Plaintiffs would be injured in Ohio thereby and/or Defendants purposely availed themselves of the privilege of acting and doing business in Ohio; one or more of Plaintiffs' causes of action arise out of Defendants' activities in Ohio; and the exercise of personal jurisdiction over Defendants is reasonable.

13. Venue is proper in the Southern District of Ohio, Eastern Division pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to this action occurred in this District; Bobo lives and works in this District and Zahara's principal place of business is in this District.

## STATEMENT OF FACTS

14. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

15. In October 2012, Bobo formed Zahara, an Ohio limited liability company, with Bobo as its sole member. In August 2015, Zahara filed a Trade Name Registration with the Ohio Secretary of State, registering the name "Cards For All People." The general nature of the business is stated as: "Casual Mobile and Card Games."

16. Between 2015 and 2017, Bobo developed the card game "Black Card Revoked". Over the next few years, Bobo developed additional editions of Black Card Revoked, as well as expansion packs including Black Card Revoked: Black History, Black Card Revoked: Saved and

4

Sanctified, and Black Card Revoked: Old School. All editions of Black Card Revoked were developed in and distributed from this Judicial District.

17. Valid copyrights were established at or around the time the original Black Card Revoked and each subsequent version was created, printed, and distributed.

18. In addition, Bobo filed copyrights in the United States Copyright Office for several versions of the Black Card Revoked game, each of which designates Bobo as the author.

19. On or around March 1, 2016, Bobo filed and obtained federal copyright registration for the first edition of Black Card Revoked under registration no. TX0008306619.

20. On or around March 1, 2016, Bobo filed and obtained federal copyright registration for Black Card Revoked Girls Night Out! Expansion Pack under registration no. TX0008306617.

21. On or around March 1, 2016, Bobo filed and obtained federal copyright registration for Black Card Revoked Black History Expansion Pack under registration no. TX0008306616.

22. On or around November 21, 2017, Bobo filed and obtained federal copyright registration for the third edition of Black Card Revoked under registration no. TX0008556664.

23. On or around May 30, 2019, Bobo filed and obtained federal copyright registration for the fourth edition of Black Card Revoked under registration no. TX0008746718.

24. Williams has falsely claimed to be an author of Black Card Revoked and has thereby asserted an ownership interest in the Black Card Revoked copyrights and related intellectual property ("IP"). That dispute is currently pending before this Court in *Latesha Williams v. Jaryah Bobo, et al.,* Case No. 2:22-cv-03561-MHW-CMV. Williams is named as a Defendant herein pursuant to Fed. R. Civ. P. 20(a)(2)(B).

25. The Black Card Revoked game features a series of question and response cards relating to Black popular culture. The goal of the game is to answer questions correctly and avoid

having your "Black Card" revoked due to insufficient familiarity with Black culture and history. Players who are most steeped in Black culture and history tend to perform best at Black Card Revoked.

26. Black Card Revoked went "viral" almost immediately after its release, and quickly became a cultural touchstone. Game sales rapidly increased through retail outlets as diverse as Amazon, Kohl's, Family Dollar, Target and Walmart. Black Card Revoked also became the subject of countless social media posts and traditional media coverage, drawing the attention of CNN, the L.A. Times, the Washington Post, VH1, Buzzfeed, Oprah Winfrey, Kevin Hart, Dwayne "The Rock" Johnson and Megan Thee Stallion among others.

27. Bobo's Black Card Revoked card games are original, creative works in which Bobo owns protectable copyright interests.

28. Bobo assigned IP rights in Black Card Revoked to Zahara for the purpose of developing, producing, licensing and selling television and theatrical productions derived from the game.

29. On or about April 23, 2017, Zahara entered into a License Agreement with MTF Partners LLC ("MTF"), by which Zahara granted a license to MTF to use, sell, distribute and advertise the Black Card Revoked IP for theatrical and television use. A true and accurate copy of that License Agreement is attached hereto as Exhibit 1.

30. On or about August 25, 2017, MTF entered into a Rights Acquisition Term Sheet with Black Entertainment Television LLC ("BET") for the development, production and exploitation of a television series ("the Series") based on the Black Card Revoked game. A true and accurate copy of that Rights Acquisition Term Sheet is not attached hereto as it was designated

6

Strictly Confidential by the parties thereto, but will be produced in accordance with an appropriate Court order in this litigation.

31. A total of twelve (12) episodes of the Series aired on BET, with the first air date of the first episode on January 18, 2018 and the first air date of the twelfth episode on April 12, 2018.

32. At the time the Series was produced and originally aired, BET was a division of Viacom, Inc.

33. On or around April 13, 2018 (one day after the first air date of the 12th and final episode of the Series on BET), Comedy Central aired a horror-comedy sketch called "The Blackening" performed by the comedy troupe known as 3PEAT. The general premise of this sketch is that a group of Black individuals find themselves being stalked by a killer. As a parody of mainstream horror films in which the Black character is often the first to be killed, the killer offers to spare all but the "Blackest" one among them. This offer spurs all of the characters to attempt to determine which one of them is the "Blackest" by making various statements, admissions and denials relating to their familiarity with Black culture and history. As with players of Black Card Revoked, characters in the 3PEAT sketch who are most steeped in Black culture and history tend to perform best.

34. Plaintiffs are informed and believe and thereby allege that the 3PEAT sketch "The Blackening" was written by Perkins.

35. When the 3PEAT sketch "The Blackening" initially aired on Comedy Central, Comedy Central was also a division of Viacom, Inc.

36. On or about April 15, 2019, all of the rights that were licensed to BET by MTF through the August 25, 2017 Rights Acquisition Term Sheet reverted to MTF. A true and accurate

7

copy of a Letter from BET to MTF confirming that reversion of rights is attached hereto and incorporated herein as Exhibit 2.

37. On or around April 13, 2020, Bobo filed federal copyright registration of a screenplay called "Southern Education". Southern Education is a horror story involving a group of young black individuals in a rural setting who are tormented by a villain who inflicts punishment on them while testing their "Blackness". Southern Education is based on the Black Card Revoked game and its unique manner and method of testing players' familiarity with Black culture and history.

38. On or around April 27, 2020, Southern Education was registered under federal copyright registration no. PAU004026719 naming Bobo as the sole author.

39. MTF actively "shopped" the Southern Education screenplay to various motion picture studios in 2020, pursuant to the April 23, 2017 License Agreement between Zahara and MTF.

40. On or around October 14, 2021, an assignment was recorded in the Copyright Office transferring "The Blackening" from the members of 3PEAT (including Perkins) to Oaktree.

41. On or around October 14, 2021, an assignment was recorded in the Copyright Office transferring "Untitled 3PEAT Project/The Blackening" from Central Productions, LLC to Oaktree.

42. On or around October 14, 2021, an assignment was recorded in the Copyright Office transferring "The Blackening" motion picture and screenplay from Oaktree to Hot Sauce.

43. On or around October 18, 2021, MRC filed a copyright preregistration for "The Blackening" motion picture, listing Hot Sauce as the author.

44. On or around November 30, 2021, Hot Sauce registered "The Blackening"

8

screenplay, listing Oaktree as the author via an employment arrangement.

45. On or about April 28, 2022, Zahara notified MTF in writing that the April 23, 2017 License Agreement between Zahara and MTF was terminated effective immediately. A true and accurate copy of that correspondence is attached hereto and incorporated herein as Exhibit 3.

46. *The Blackening* movie involves a group of young Black individuals on a camping trip in a rural setting, wherein they discover a mysterious board game and a villain reminiscent of Jigsaw from the Saw series of movies. The board game includes a series of cards with questions or themes designed to test the characters' "Blackness". The villain has kidnapped one of the individuals and is threatening to kill them all unless they sacrifice the one determined to be the "Blackest". As in the 3PEAT sketch, the characters respond by attempting to determine which one of them is the "Blackest" by making various statements, admissions and denials relating to their familiarity with Black culture and history. As with players of Black Card Revoked, characters in *The Blackening* movie who are most steeped in Black culture and history tend to perform best.

47. Plaintiffs are informed and believe and thereby allege that *The Blackening* movie was co-written by Perkins.

48. Plaintiffs are informed and believe and thereby allege that *The Blackening* movie includes a number of themes and punchlines taken directly from Black Card Revoked and/or Southern Education which were original to Bobo.

49. Plaintiffs are informed and believe and thereby allege that Defendants knew of or should have known of the existence of Black Card Revoked due to its viral popularity and widespread media coverage, especially as both Black Card Revoked and *The Blackening* movie relate to Black culture and history and specifically to a unique method of testing the "Blackness" of their respective players or characters.

50. Plaintiffs are informed and believe and thereby allege that Defendants have had access to Black Card Revoked through its general commercial availability and media publicity prior to and/or during Defendants' development of *The Blackening* movie.

51. Plaintiffs are informed and believe and thereby allege that Defendants have had access to Southern Education as a result of MTF's efforts to shop the Southern Education screenplay to various motion picture studios prior to and/or during the Defendants' development of *The Blackening* movie.

52. Plaintiffs did not approve, authorize or license the actual or derivative use of their copyrighted works or related IP by Defendants.

53. Plaintiffs have not been compensated for the actual or derivative use of their copyrighted works or related IP by Defendants.

54. Plaintiffs are informed and believe and thereby allege that Defendants reviewed and approved of the chain of title of copyrighted materials and related IP incorporated in *The Blackening* movie prior to and/or during its development.

55. Plaintiffs are informed and believe and thereby allege that Defendants at all times had the ability to prevent or stop the unauthorized use, modification, reproduction, and distribution of Plaintiffs' copyrighted materials and related IP.

56. Plaintiffs are informed and believe and thereby allege that Defendants engaged in the infringement of Plaintiff's copyrighted materials and related IP knowingly and in violation of applicable United States Copyright laws.

**FIRST CAUSE OF ACTION: COPYRIGHT INFRINGEMENT**

57. Plaintiffs incorporate the preceding paragraphs as if fully rewritten herein.

58. Plaintiffs allege that Defendants infringed Plaintiffs' copyrights and related IP by

creating, making, and/or developing directly infringing and/or derivative works from Black Card Revoked and/or Southern Education, and by producing and distributing films that infringe Black Card Revoked and/or Southern Education, and by granting unauthorized licenses, sublicenses, transfers, or conveyances for and of Black Card Revoked and/or Southern Education.

59. As a direct and proximate result of said infringement by Defendants, Plaintiffs are entitled to actual damages in an amount to be proven at trial.

60. Defendants' infringement has been willful and deliberate and was done for the purpose of making commercial use of and financial gain on Plaintiffs' copyrighted works and related IP and to entertain audiences throughout the country and in this Judicial District, wherein Defendants knew or should have known that Plaintiffs reside and have their principal place of business. Plaintiffs are entitled to increased damages as a result of Defendants' willful misconduct.

61. If *The Blackening* movie is released as planned, Plaintiffs' ability to market, sell and exploit their copyrighted works and related IP in this Judicial District and elsewhere will be severely limited or destroyed.

62. As a direct, foreseeable, and proximate result of Defendant's misconduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and thereby avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the copyrighted works and related IP. Plaintiffs are entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringement of Plaintiffs' rights.

**WHEREFORE,** for the foregoing wrongful acts, Plaintiffs demand judgment in their favor, as follows:

1. That the release of *The Blackening* movie be temporarily, preliminarily and permanently

enjoined;

2. That, pursuant to 17 U.S.C. § 504(b), Defendants be required to pay to the Plaintiffs, such actual damages as the Plaintiffs may have sustained in consequence of Defendants' infringement and all profits of Defendants that are attributable to the infringement of Plaintiffs' copyrights. Plaintiffs request Defendants account for all gains, profits, and advantages derived by Defendants from their infringement including profits of all sales of Defendants since the date of first commercial release;

3. That, pursuant to 17 U.S.C. § 504(c)(I), Defendants by required to pay an award of statutory damages in a sum of not less than $30,000.00 should this statutory remedy be elected;

4. That the Court find Defendants' conduct was committed willfully;

5. That, pursuant to 17 U.S.C. § 504(c)(2), Defendants be required to pay an award of increased statutory damages in a sum of not less than $150,000.00 for willful infringement should this statutory remedy be elected.

6. That, pursuant to 17 U.S.C. § 505, Defendants be required to pay the Plaintiffs' full costs in this action and reasonable attorney's fees to Plaintiffs' attorney.

7. That Defendants' conduct was willful or wanton and done in reckless disregard of Plaintiffs' rights thereby entitling Plaintiffs to recover punitive damages in an amount to be determined at trial.

8. All such other relief as this Court may deem just and proper.

    Respectfully submitted,

    CARLILE PATCHEN & MURPHY LLP

    By: */s/ Michael J. King*
    Michael J. King (0072597)
    Matthew S. Brown (0077687)
    Eric J. Estadt (0099857)

>mking@cpmlaw.com
>mbrown@cpmlaw.com
>eestadt@cpmlaw.com
>950 Goodale Blvd., Suite 200
>Columbus, Ohio 43215
>Tele:   (614) 228-6135
>Fax:    (614) 221-0216
>*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues presented herein

>*/s/ Michael J. King*
>Michael J. King (0072597)

13