UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Zahara Ariel LLC, et al.,

        Plaintiffs,

  v.

Lionsgate Entertainment
Corporation, et al.,

        Defendants.

Case No. 2:23-cv-1916

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Zahara Ariel LLC ("Zahara") and Jaryah Bobo ("Bobo," collectively "Plaintiffs") move for a temporary restraining order ("TRO") against Lionsgate Entertainment Corporation ("Lionsgate"), MRC II Distribution Company L.P. ("MRC"), Hot Sauce LLC ("Hot Sauce"), Oaktree Entertainment LLC ("Oaktree"), AMC Entertainment Holdings, LLC ("AMC"), Dewayne Perkins ("Perkins"), and Latesha Williams ("Williams," collectively "Defendants"). ECF No. 2. AMC Entertainment Holdings, LLC ("AMC") is also a defendant in this case. See Second Am. Compl., ECF No. 11.[1] Lionsgate, MRC, Hot Sauce, and Oaktree

---

[1] After Plaintiffs filed their motion for a TRO, Plaintiffs amended their complaint and added AMC as a Defendant. See Second Amend. Compl., ECF No. 11. Therefore, Plaintiffs do not move for a TRO against AMC.

("Moving Defendants") challenge the Court's personal jurisdiction over them. ECF Nos. 6 & 8.[2]

For the following reasons, the Court concludes that it does not have personal jurisdiction over Moving Defendants and sua sponte transfers this case to the Central District of California.

## I. BACKGROUND

Plaintiffs allege the following: Bobo created a card game called "Black Card Revoked" (the "Game"). Second Amend. Compl. ¶ 22, ECF No. 11. The Game went "viral," and spawned several spin-off games and a television series on Black Entertainment Television ("BET") by the same title. *Id.* ¶ 32.

The day after the final episode aired on BET, on April 13, 2018, Comedy Central aired a comedy sketch called "The Blackening," which seemed to take a lot of inspiration from the Game and/or the Southern Education screenplay. *Id.* ¶ 39. On April 13, 2020, Bobo registered a screenplay entitled Southern Education with essentially the same plot with the U.S. Copyright Office. *Id.* ¶ 43.

Eventually, the comedy sketch turned into a movie, "The Blackening," with substantially the same plot as the comedy sketch (the "Movie"). *Id.* ¶¶ 52–53. Plaintiffs allege that the movie contains themes and direct quotes from the Game. *Id.* ¶ 54. Plaintiffs allege that they did not approve, authorize, or license

---

[2] Defendants AMC, Perkins, and Williams have not yet been served with a copy of the Second Amended Complaint, nor have they submitted briefs on the issue of personal jurisdiction.

the use of their intellectual property, nor have they been compensated for that use. *Id.* ¶¶ 60–61.

Plaintiffs now seek a TRO. ECF No. 2. Among other relief, Plaintiffs ask the Court to enjoin the release, distribution, screening, streaming, broadcasting, or other showing of the Movie. *Id.*

As a preliminary note, the Court observes that the Movie has already been shown publicly. *See* https://www.nytimes.com/2023/06/08/movies/the-blackening-behind-the-scenes.html.[3] This does not, however, moot this case. Continuing infringement is its own injury. *Cf. ACT, Inc. v. Worldwide Interactive Network*, No. 3:18-CV-186, 2021 WL 5161678, at *14 (E.D. Tenn. Aug. 18, 2021) (explaining, in a different context, that the plaintiff would continue to be harmed if the defendant continued infringing).

## II. PERSONAL JURISIDCTION

The Court construes Moving Defendants' briefing on personal jurisdiction as motions under Federal Rule of Civil Procedure 12(b)(2).

### A. Standard of Review

Plaintiff has the burden of proving personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing cases). Federal Rule of Civil Procedure 12(b)(2) allows a defendant to raise the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2). If the Court rules on a

---

[3] As the article explains, the Movie was shown at the Toronto International Film Festival in the fall of 2022 and was shown again at the Tribeca Festival on June 13, 2023.

Rule 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (internal citation omitted). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006).

When, as here, a court resolves a Rule 12(b)(2) motion based on "written submissions and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) and *Theunissen*, 935 F.2d at 1458)); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) ("[A] court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." (internal quotation marks and citations omitted)).

After a 2020 revision, Ohio's long-arm statute became co-extensive with the limits of the federal Due Process Clause. Ohio Rev. Code § 2307.382(C) ("In addition to a court's exercise of personal jurisdiction under division (A) of this

section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution."); 2020 Ohio Laws File 44 (Am. H.B. 272) (amending Ohio's long-arm statute to make it co-extensive with the federal Due Process Clause); *see also C.T. v. Red Roof Inns, Inc.*, No. 2:19-CV-5384, 2021 WL 2942483, at *10 (S.D. Ohio July 1, 2021), *appeal dismissed*, No. 21-3635, 2021 WL 4739619 (6th Cir. Aug. 4, 2021) (citing to Ohio Rev. Code § 2307.382(C) and observing that Ohio's long-arm statute and the U.S. Constitution "are now coextensive"). So, if the Court finds that it has personal jurisdiction over Defendants under the federal Due Process Clause, it will also have personal jurisdiction over Defendants under Ohio's long-arm statute. *See Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003) ("Where the state long-arm statute extends to the limits of the due process clause . . . the court need only determine whether exercising personal jurisdiction violates constitutional due process." (internal citations omitted)).

**B. Analysis**

As a rule, "[p]ersonal jurisdiction must be analyzed and established over each defendant independently." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006). Here, however, all Defendants are citizens of states other than Ohio, and Plaintiff's allegations are nearly identical for all three Defendants. *See generally*, Second Amend. Compl., ECF No. 11. So, if the Court were to analyze personal jurisdiction separately for each Defendant, it would repeat itself almost verbatim four times over. Thus, this case is a rare

instance where it is appropriate to analyze personal jurisdiction over the Moving Defendants as a group. *See Smal & Partners UK Ltd. v. Podhurst Orseck P.A.*, No. CIV. 11-5260 JLL, 2012 WL 1108560, at *3 (D.N.J. Mar. 2, 2012), *report and recommendation adopted*, No. CIV.A. 11-05260 JLL, 2012 WL 1107727 (D.N.J. Apr. 2, 2012) (acknowledging that, as a rule, "a court analyzes specific personal jurisdiction on a defendant-by-defendant" basis, but observing that "[c]ertain situations, however, may allow a court to assess defendants together" (citing cases)).

The relevant Due Process inquiry is "whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)). The Court may exercise personal jurisdiction over a non-resident defendant based on either general or specific jurisdiction. *See Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). Only specific jurisdiction is at issue here.

The Sixth Circuit has established a three-part test to determine whether specific personal jurisdiction exists over a non-resident defendant:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a

substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air Prods. & Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). As the Sixth Circuit has explained, this test is "based on existing Supreme Court jurisprudence on personal jurisdiction, primarily *International Shoe*." *Air Prod. & Controls, Inc.*, 503 F.3d at 550. Further, "the approach simply applies in a specific fashion the broad rule requiring substantial minimum contacts as a basis for jurisdiction." *Id.* (internal quotation marks and citations omitted).

### 1. Purposeful Availment

The first prong requires that a defendant purposefully avail himself of the privilege of acting in the forum state. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (cleaned up). "Purposeful availment" is the "constitutional touchstone" of personal jurisdiction and is present where the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted).

The "'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state 'proximately result' from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *CompuServe Inc.*, 89 F.3d at 1263 (quoting *Burger King*, 471 U.S. at 474–75) (emphasis in original). The quality and nature of the defendant's contacts are crucial to the determination of purposeful availment. *See Burger King*, 471 U.S. at 475 (explaining that purposeful availment cannot be based on the "unilateral activity of another party or a third person" (internal quotation marks and citations omitted)). However, "physical presence in a forum state is not required." *Air Prod. & Controls, Inc.*, 503 F.3d at 551.

Here, Plaintiffs allege the following relevant contacts with the forum:

- Plaintiffs are informed and believe and thereby allege that Lionsgate "won a bidding battle to acquire worldwide rights to MRC's The Blackening," and that the deal between Lionsgate and MRC "calls for a wide theatrical distribution." Second Am. Compl. ¶ 8, ECF No. 11.

- Plaintiffs are informed and believe and thereby allege that MRC knew and intended that Lionsgate would distribute The Blackening movie nationwide if not worldwide, including in this Judicial District. *Id.* ¶ 9.

- Plaintiffs are informed and believe and thereby allege that the distribution agreement between Lionsgate and MRC expressly and affirmatively requires Lionsgate to distribute The Blackening movie to movie theaters nationwide, including in this Judicial District. *Id.* ¶ 10.

- Plaintiffs are informed and believe and thereby allege that the distribution agreement between Lionsgate and MRC expressly and affirmatively requires Lionsgate to distribute The Blackening movie to AMC movie theaters, including AMC movie theaters in this Judicial District. *Id.* ¶ 11.

- The Blackening movie is in fact scheduled to be screened on a limited basis in a number of AMC movie theaters in this Judicial District as early

as the evening of June 15, 2023, with all-day screenings scheduled to begin in those theaters on June 16, 2023 . . . *Id.* ¶ 12.

This case is similar to the Sixth Circuit case *Bridgeport Music*, which the Sixth Circuit has subsequently summarized as follows:

> There, plaintiffs (which we referred to collectively as "Bridgeport") brought a copyright-infringement lawsuit in the Middle District of Tennessee against a Texas corporation (which we referred to as "NTW") and a Florida company (which we referred to as "DM"). The district court dismissed the case for lack of personal jurisdiction, and on appeal we affirmed the dismissal of NTW but reversed the dismissal of DM. In doing so, we adopted what is known as the "stream of commerce 'plus' " theory of specific personal jurisdiction. Under that theory, for a defendant to purposely avail himself of the privilege of acting within a forum state, he must do more than merely place a product into the stream of commerce.
>
> When applying the "plus" approach in Bridgeport Music, we encountered identical arguments for each defendant. Bridgeport claimed that NTW and DM both had licensing agreements with third parties that distributed the allegedly infringing music nationwide (and thus in Tennessee). But we picked up on a subtle yet important distinction between the companies: Bridgeport had not shown that NTW did anything to direct its distributor's activities into Tennessee, but Bridgeport had shown that DM affirmatively "sought" distribution in all fifty States. Put differently, while NTW was "merely aware" that its distributor was likely to spread its music throughout all fifty states, DM made a "deliberate decision" to pursue such dissemination.

*Parker*, 938 F.3d at 840–41 (cleaned up).

Additionally, if Plaintiffs can show that Moving Defendants requested or required distribution of the Movie within all fifty states, that may be enough to show purposeful availment. *Id.* at 841. Here, then, the question is whether Moving Defendants made a "deliberate decision" to distribute the Movie in Ohio, or if they were "merely aware" that the Movie would likely be distributed in this state.

Lionsgate and MRC entered into an acquisition agreement (the "Acquisition Agreement") which required Lionsgate to release the Movie to a certain number of screens simultaneously in the United States and Canada.[4] What is absent from the Acquisition Agreement is any requirement that either Lionsgate or MRC II "directed distribution of the [Movie] within the United States or specifically within [Ohio]." *Parker*, 938 F.3d at 840. Rather, the Acquisition Agreement requires distribution only to a certain number of screens in the United States and Canada. It does not require distribution "throughout" the United States, in every state within the United States, or even in the Midwest region (let alone in Ohio). Although this is a narrow distinction, the distinction is dispositive under *Bridgeport Music* and *Parker*.

Accordingly, because Moving Defendants "submitted affirmative evidence showing that the Court lacks jurisdiction over them, Plaintiffs' mere allegations of jurisdiction are not enough." *Parker*, 938 F.3d at 839 (cleaned up). Furthermore, the evidence undermines Plaintiffs' allegations of personal jurisdiction and shows only that Moving Defendants may have been "merely aware" that the Movie would be distributed in Ohio and does not support Plaintiff's allegations that Moving Defendants made a deliberate decision to distribute the Movie in Ohio.

---

[4] At the Court's request, Counsel for MRC, Hot Sauce, and Oaktree submitted a copy of the Acquisition Agreement between Lionsgate and MRC to the Court for *in camera* review, and provided a copy to Plaintiffs subject to a confidentiality agreement.

Therefore, Plaintiffs cannot demonstrate that Moving Defendants purposefully availed themselves of Ohio.

Plaintiffs also argued during a teleconference that they are either an Ohio resident or Ohio LLC, that they developed the Game and Southern Education in Ohio, and that Moving Defendants' copyright infringement intentionally caused harm in Ohio. *See also* Second Amend. Compl. ¶¶ 3–4, 18, ECF No. 11.

*Walden v. Fiore* forecloses this argument. In *Walden*, the Supreme Court held that "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. 277, 285. Therefore, a "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 289–90; *see also Parker*, 938 F.3d at 840.

### 2. Arising From

Under the second part of the test, the cause of action must "arise from" the defendant's activities in the forum state. *See Air Prods. Controls Inc.*, 503 F.3d at 553. A cause of action "arises from" a defendant's activities in the state when the defendant's contacts with the forum state are related to the operative facts of the plaintiff's cause of action. *CompuServe, Inc.*, 89 F.3d at 1267. Said another way, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S.

Ct. 1773, 1781 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Here, the cause of action does not arise out of Moving Defendants' activities in or contacts with Ohio. Moving Defendants' only apparent connection to Ohio is distributing the Movie to theaters in Ohio; however, as the Court explained above, there is no evidence that Moving Defendants intentionally targeted Ohio. "Given the above conclusion that Plaintiffs have not demonstrated that Moving Defendants had sufficient minimum contacts with Ohio, Plaintiffs' cause of action for copyright infringement cannot arise from Defendant's Ohio activities[.]" *Campinha-Bacote v. Wick*, No. 1:15-CV-277, 2015 WL 7354014, at *7 (S.D. Ohio Nov. 20, 2015) (cleaned up) (citing *Haley v. City of Akron*, No. 5:13-cv-232, 2014 WL 804761, at *9 (N.D. Ohio Feb. 27, 2014)).

### 3. Reasonableness

Finally, courts employ several factors to determine whether there is a sufficient connection such that exercise of personal jurisdiction is reasonable. They include: (1) the burden on the defendant to litigate in the forum state; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interest of other states in securing the most efficient resolution of the case. *CompuServe Inc.*, 89 F.3d at 1268 (internal quotation marks and citations omitted).

Again, because Plaintiffs "fail to satisfy the first two prongs of the test— either of which is dispositive—the Court need not dwell on the third." *Baker v.*

*Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 807 (S.D. Ohio 2020) (citing *LAK, Inc., v. Deer Creek Enters.*, 885 F.2d 1293, 1303 ("[E]ach criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.")).

### III.  JOINDER

Because the Court lacks personal jurisdiction over Moving Defendants, and because non-moving Defendants have not addressed the issue, the Court must decide whether to (1) dismiss Moving Defendants from this case, or (2) dismiss or transfer the entire case.  The Court turns to the Rule 19 Joinder framework for guidance.

### A. Standard of Review

Whether joinder is proper under Federal Rule of Civil Procedure 19 is a three-step process:

First, the court must determine whether the person or entity is a necessary party under Rule 19(a).

Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction.

Third, if joinder is not feasible because it will eliminate the court's ability to hear a case, the court must analyze the Rule 19(b) factors to determine whether the court should "in equity and good conscience" dismiss the case because the

absentee is indispensable. *Glancy v. Taubman Ctrs. Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (internal quotation marks and citations omitted) (emphasis in original).

### 1. Necessary Party

As for the first step, Rule 19(a)(1) instructs that a required party is one where:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may:

   (i) as a practical matter impair or impede the person's ability to protect the interest; or

   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

"Under Rule 19(a)(1)(B), a party can be deemed 'necessary' to litigation if it is a party to an agreement in dispute." *Spielman v. IMG Coll., LLC*, No. 2:17-CV-612, 2019 WL 13044154, at * 3 (S.D. Ohio Nov. 27, 2019) (internal citation omitted).

Here, all Defendants are allegedly involved in some way with the infringing actions. In addition, several Moving Defendants are parties to contracts involving relevant IP rights. Although this is not a traditional contract case, the contracts related to the assignments of the IP may be important. At the very least, whether Moving Defendants have infringed upon the IP that is the subject of those

contracts is in question. Thus, because Moving Defendants are parties to a contract, the subject matter of which is central to this dispute, Moving Defendants claim "an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1).

### a. Properly Joined?

Because Moving Defendants are necessary parties, the Court must next consider whether they can be joined. In that consideration, the Court must evaluate both whether joinder would destroy the Court's subject matter jurisdiction and whether the Court has personal jurisdiction. Because the Court has already determined that it lacks personal jurisdiction over Moving Defendants, Moving Defendants cannot be properly joined.

### b. Indispensable Party

Next, the Court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or be dismissed." Fed. R. Civ. P. 19(b). Factors to aid in this determination include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The inability to join a required party does not always result in dismissal. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008). Rather, the court must undergo a "case specific" analysis . . . based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests" to determine whether a party is also indispensable to the litigation. *Id.* (internal citation omitted).

Prejudice. In this case, Moving Defendants would likely be prejudiced if this case continued without them. There is no one in this case that has a "complete identity of interests" with Moving Defendants. *Glancy*, 373 F.3d at 672. Thus, Moving Defendants are not adequately represented here and would be prejudiced by an inability to protect their interests in this case. *Id.* In addition, existing parties could be prejudiced because a judgment entered in Moving Defendants' absence would not bind Moving Defendants and, therefore, they could potentially still release an allegedly infringing product. *Cf. Spielman*, 2019 WL 13044154, at *5 (concluding that, absent a necessary party being joined, any injunction would only prohibit the other parties from infringing on individuals'

names, image, and likeness, but would not stop the use altogether). Indeed, because Plaintiffs are seeking a TRO restraining distribution of the Movie, and Moving Defendants are seemingly in the best position to halt distribution, Moving Defendants are the real parties in interest in this case and would be prejudiced if the case continued without them. *See Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 769 (6th Cir. 1999) (holding that the defendants in the case were prejudiced when the real party in interest was not a party to the case).

<u>Lessen Prejudice and Adequacy of Judgment.</u> Here, the prejudice could not be lessened. Suppose Plaintiffs prevail in this case. In that instance, there would be no way for the Court to both adequately address Plaintiffs' injury and protect Moving Defendants. That is, any adequate relief to Plaintiff would have to include enjoining the infringing conduct, but Defendants would have an interest in continuing that conduct—and would never have had the opportunity to contest the issue. Again, Moving Defendants are the real parties in interest in this case. *Soberay*, 181 F.3d at 769 (holding, under this factor, that the prejudice cannot be lessened or avoided when the real party in interest is not a party to the action); *cf. Lykins v. Westinghouse Elec.*, 710 F. Supp. 1122, 1125 (E.D. Ky. 1988) (finding no ability to lessen prejudice where the absent parties' interests and the plaintiff's interest in an injunction are "mutually exclusive").

<u>Adequate Remedy.</u> Here, there is an adequate remedy: Plaintiffs can pursue this case in the Central District of California, where Moving Defendants would likely be subject to general personal jurisdiction and other Defendants

would likely be subject to specific personal jurisdiction. Although Rule 19 focuses on dismissal of the action, because this case involves a TRO with a quickly-approaching deadline, the Court finds that it is in the interests of justice and judicial economy to sua sponte transfer this case.

## IV.  CONCLUSION

Accordingly, the Clerk is **DIRECTED** to transfer this case to the Western Division of the Central District of California with notice of a pending TRO.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**